J-S54002-19
J-S54003-19

2022 PA Super 130

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRENDAN PATRICK YOUNG | : | No. 2088 MDA 2018 |

Appeal from the Order Entered November 21, 2018
In the Court of Common Pleas of Centre County Criminal Division at
No(s): CP-14-CR-0000784-2018,
CP-14-CR-0001389-2017, CP-14-CR-0001540-2018

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DANIEL CASEY | : | No. 2089 MDA 2018 |

Appeal from the Order Entered November 21, 2018
In the Court of Common Pleas of Centre County Criminal Division at
No(s): CP-14-CR-0000781-2018,
CP-14-CR-0001377-2017, CP-14-CR-0001536-2018

BEFORE:  BOWES, J., LAZARUS, J., and DUBOW, J.

OPINION BY BOWES, J.:                          **FILED AUGUST 03, 2022**

The instant appeals are before us on remand from our Supreme Court. We have been directed to consider whether the Commonwealth should be permitted pursuant to Pa.R.A.P. 902 to correct its failure to file separate notices of appeal at each of the dockets affected by the trial court's

November 21, 2018 order which, inter alia, granted in part the suppression motions filed by Brendan Patrick Young and Daniel Casey (collectively "Appellees"). *See Commonwealth v. Young*, 265 A.3d 462, 477-78 (Pa. 2021) ("*Young*"). Following consideration of the competing principles and interests, we remand for the Commonwealth to correct its procedural error, while retaining jurisdiction to subsequently either address the merits of the appeals or quash them if the Commonwealth fails to comply.

We begin with a recap of the litigation among these parties. The Commonwealth filed six separate criminal informations, three for each Appellee, charging them with various offenses related to alleged hazing activities in 2016 and 2017, including the death of Timothy J. Piazza at the Beta Theta Pi fraternity at the Pennsylvania State University on February 2, 2017. Each Appellee filed an omnibus pre-trial motion at all three docket numbers assigned to his respective cases. The motions included the contention that cell phone evidence must be suppressed because it was obtained pursuant to overbroad search warrants in violation of the Fourth Amendment to the United States Constitution and Article I, § 8 of the Pennsylvania Constitution. Appellees also challenged the constitutionality of the since-repealed anti-hazing statute that formed the basis for some of the charges against them.[1]

---

[1] 24 P.S. §§ 5351-5354 (repealed and replaced with 18 Pa.C.S. §§ 2801-2811 effective November 19, 2018).

The trial court, by a single opinion and order captioned with all six docket numbers for both Appellees, upheld the constitutionality of the anti-hazing law, but granted the motions to suppress the cell phone evidence. The trial court subsequently amended its order in accordance with 42 Pa.C.S. § 702(b) to indicate that the constitutionality of the anti-hazing law presented a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter.

Both sides sought interlocutory appellate review. Specifically, the Commonwealth filed two notices of appeal, one for each Appellee listing the three docket numbers pertinent to him, from the suppression ruling pursuant to Pa.R.A.P. 311(d) (permitting the Commonwealth to take an interlocutory appeal as of right in criminal cases from an order which the Commonwealth certifies will terminate or substantially handicap the prosecution). Appellees filed a single joint petition, listing all six docket numbers, seeking permission to appeal the trial court's amended order in accordance with Pa.R.A.P. 312 and Pa.R.A.P. 1311. **See** Pa.R.A.P. 312 (providing that interlocutory appeals may be taken by permission pursuant to Chapter 13 of the Rules of Appellate Procedure); Pa.R.A.P. 1311(b) (governing the time and manner for petitioning for permission to appeal).

Both sides were unsuccessful in their bids for interlocutory review based upon the mandate of our Supreme Court's decision in **Commonwealth v.**

***Walker***, 185 A.3d 969 (Pa. 2018). In ***Walker***, the Commonwealth sought to pursue an interlocutory appeal as of right pursuant to Pa.R.A.P. 311(d) as to an order granting suppression motions filed by four separate defendants who were arrested as a result of the same vehicle stop. The Commonwealth filed a single notice of appeal which listed the four docket numbers at issue. This Court quashed the appeals on the basis that the Official Note to Pa.R.A.P. 341, which governs appeals from final orders, states that where one order resolves issues arising on more than one docket, separate notices of appeals must be filed.

Our Supreme Court agreed that Rule 341's Official Note mandated the filing of separate notices of appeal at each docket number, but it reversed our quashal of the appeal in ***Walker*** because the Note's mandate contradicted "decades of case law from this Court and the intermediate appellate courts that, while disapproving of the practice of failing to file multiple appeals, seldom quashed appeals as a result." ***Walker***, ***supra*** at 977. However, the Court stated a bright-line rule that "in future cases Rule 341(a) will, in accordance with its Official Note, require that when a single order resolves issues arising on more than one lower court docket, separate notices of appeal must be filed. The failure to do so will result in quashal of the appeal." ***Id***. (footnote omitted). The ***Walker*** Court further directed the amendment of the Official Note to Rule 341 and suggested amendment of Rule 341 itself, as well as the portion of Chapter 3 of the Rules of Appellate Procedure ("Orders From

Which Appeals May Be Taken") governing interlocutory appeals, namely Rule 311 ("Interlocutory Appeals as of Right"), Rule 312 ("Interlocutory Appeals by Permission"), and Rule 313 ("Collateral Orders"), "to state explicitly the requirement that separate notices of appeal must be filed when a single order resolves issues arising on more than one lower court docket." *Id*.

This Court applied *Walker*'s prospective ruling to Appellees' joint petition to appeal by permission, resulting in its denial on August 28, 2019. The motions panel entertaining Appellees' request observed that the *Walker* ruling applied equally to appeals taken pursuant to Rules 311, 312, and 341. *See Commonwealth v. Casey*, 218 A.3d 429, 431 (Pa.Super. 2019) ("*Casey*"). Since *Walker* controlled, we held that "[Appellees'] failure to file a separate appeal petition for each docket number [wa]s fatal to their petition for permission to appeal" pursuant to Rule 312. *Id*. Our Supreme Court declined to review this Court's decision. *See Commonwealth v. Casey*, 10 MM 2020 (Pa. June 2, 2020).

The instant panel likewise determined that this Court was unable to address the substance of the Commonwealth's two appeals as of right in the case *sub judice* based upon *Walker* violations, and therefore quashed the appeals by non-precedential decisions filed on October 28, 2020 (2089 MDA 2019), and November 2, 2020 (2088 MDA 2019). Although the Commonwealth had requested leave "to amend the notice of appeal" to comply with *Walker*, *see* Response to Rule to Show Cause, 3/4/19, at 7, we

failed to discern how the belated amendment of the single notice it filed could remedy its failure to timely file separate notices of appeal at the other two docket numbers. We therefore quashed the appeals.

Our Supreme Court opted to grant review of our quashal of the Commonwealth's appeals and partially overruled *Walker* by holding that failure to file separate notices of appeal at each docket number implicated by the appealed-from order did not **necessarily** require quashal. *See Young*, *supra* at 476. Rather, filing a single notice of appeal for all implicated docket numbers was a non-jurisdictional defect that can, where appropriate, be remedied pursuant to Pa.R.A.P. 902.[2] Rule 902 provides that a procedural omission other than the timely filing of a notice of appeal does not impact the validity of the appeal, "but it is subject to such action as the appellate court deems appropriate, which may include, but is not limited to, remand of the

---

[2] Rule 902 provides as follows:

> An appeal permitted by law as of right from a lower court to an appellate court shall be taken by filing a notice of appeal with the clerk of the lower court within the time allowed by Rule 903 (time for appeal). Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but it is subject to such action as the appellate court deems appropriate, which may include, but is not limited to, remand of the matter to the lower court so that the omitted procedural step may be taken.

Pa.R.A.P. 902.

matter to the lower court so that the omitted procedural step may be taken."

*Id*. at 457 (emphasis omitted) (quoting Pa.R.A.P. 902).

On this point, the **Young** Court quoted with approval the concurring

opinion in **Commonwealth v. Larkin**, 235 A.3d 350 (Pa.Super. 2020) (*en*

*banc*):

> So long as a litigant timely perfects an appeal, Rule 902 allows an appellate court to take any appropriate action, including remand, to allow a party to correct any procedural misstep in a notice of appeal, excluding of course any defect relating to timeliness. A single notice of appeal referencing more than one docket number in violation of **Walker** presents a procedural misstep that easily can be remedied. A single appeal notice containing more than one court docket easily can be segregated into separate notices for each docket while the filing date of the original notice of appeal is preserved.

**Young**, **supra** at 476 (quoting **Larkin**, **supra** at 357 (Stabile, J. concurring))

(cleaned up). The High Court also cited its pre-**Walker** decision in

**Commonwealth v. Williams**, 106 A.3d 583 (Pa. 2014), in which it observed:

"in the event of a defective notice of appeal, Rule 902 encourages, though it

does not require, appellate courts to remand the matter to the lower court so

that the procedural defect may be remedied;" and, indeed the Rule indicates

a "preference for correcting procedurally defective, albeit timely, notices of

appeal so that appellate courts may reach the merits of timely appeals."

**Young**, **supra** at 477 (quoting **Williams**, **supra** at 587-77) (cleaned up).

The Court went on to expound on the use of Rule 902 in the instant

case, agreeing "with the Commonwealth that there would have been no

prejudice to [Appellees] had the Superior Court granted its prompt and clear request for remand to correct the procedural defect once it was identified." *Id*. (cleaned up). It was further convinced by the Commonwealth's contention "that nothing practical is achieved by the reflexive quashal of appeals for easily corrected, non-jurisdictional defects. Indeed, Rule 902 is designed specifically to eliminate such quashals as it eliminates the trap of failure to perfect an appeal by making timely notices of appeal self-perfecting." *Id*. (cleaned up). Accordingly, the Court concluded as follows:

> [T]he relationship between Rules 341(a) and 902 is clear. Rule 341 requires that when a single order resolves issues arising on more than one docket, separate notices of appeal must be filed from that order at each docket; but, where a timely appeal is erroneously filed at only one docket, Rule 902 permits the appellate court, in its discretion, to allow correction of the error, where appropriate. Accordingly, as there were two timely-filed notices of appeal in this case, one for each defendant, that listed additional docket numbers for each defendant, we reverse the Superior Court's order quashing the appeals and, pursuant to Rule 902, we remand to that court to reconsider the Commonwealth's request to remediate its error, so that the omitted procedural step may be taken.

*Id*. at 477–78 (cleaned up).

Justice Wecht, joined on this point by Justice Donohue, dissented to the Majority's decision to allow the Commonwealth to have a "do-over here" because "[i]t would be inequitable to afford the Commonwealth the grace that has been received by no other appellant whose appeals have been quashed for the same *Walker* violation, including [Appellees] themselves." *Id*. at 484 (Wecht, J. concurring and dissenting); *see also id*. at 482 (Donohue, J.

- 8 -

concurring and dissenting) ("I agree with the sentiment expressed by Justice Wecht that the application of the majority's holding to the Commonwealth in this appeal is abjectly unfair given that the defendants in this very case were held to the **Walker** standard, with the result that their earlier appeals were quashed."). Justice Wecht continued:

> The only ostensible difference between the Superior Court's order quashing the Commonwealth's appeal and its order quashing [Appellees'] appeals is that, because of the former order, the Commonwealth may not be able to secure a conviction, raising the possibility that the Commonwealth's challenge to the trial court's suppression rulings will evade post-verdict appellate review. However, our laws and rules must apply soberly, and without contemplation of consequence. This Court should not distort law and rules in order to give the Commonwealth a break or to assist it in securing a conviction. If [Appellees] are required to suffer **Walker**'s harsh mandate, it is only fair that we hold the Commonwealth to the same standard.

**Id**. at 485 (footnote omitted).

Back in this Court, we granted Appellees' requests to establish a briefing schedule to inform our exercise of discretion in complying with our Supreme Court's directive to consider granting relief to the Commonwealth through Rule 902. The Commonwealth in its brief advances the points made by the **Young** majority, which the Commonwealth asserts "reaffirms the well-established principle that procedural rules should be applied to allow a decision on the merits where there is no prejudice and no substantial impediment to appellate review." Commonwealth's supplemental brief at 7 (citing, *inter alia*, **Smith v. Pennsylvania Board of Probation & Parole**, 683 A.2d 278, 282 (Pa.

- 9 -

1996) ("Certainly, our rules are not intended to be so rigidly applied as to result in manifest injustice where there has been substantial compliance and no prejudice.")). It cites a string of this Court's post-*Young* decisions as demonstrating this policy favoring merits review despite *Walker* defects. *Id*. at 7-8 (citing, *inter alia*, *Interest of A.J.R.O.*, 270 A.3d 563, 570 (Pa.Super. 2022) (allowing appellant to correct *Walker* defect rather than quashing).

The Commonwealth further highlights that appellate review of pretrial suppression rulings is of great importance to "preserve the rights of society" in seeing all pertinent evidence being admitted in the prosecutions sole opportunity to place a defendant in jeopardy. *Id*. at 8-9. It asserts that, by contrast, "the Supreme Court has already found that allowing merits review pursuant to Rule 902 will cause no prejudice," and Appellees "cannot plausibly argue otherwise." *Id*. at 8 (citing *Young*, *supra* at 477).

Appellees' counter-arguments track those of the *Young* dissenting viewpoints detailed above. For example, Mr. Young maintains that Rule 902 must be construed "in light of the [appellate] rules' purpose, which presupposed the equal treatment of the parties in the same case: 'to secure the **just**, speedy and inexpensive determination of every matter to which they are applicable.'" Young's supplemental brief at 8 (quoting Pa.R.A.P. 105) (emphasis supplied in brief). Appellees both note that Rule 902 allows this Court to permit the correction of non-jurisdictional defects only where "appropriate," and that such is inappropriate in the instant appeals because it

- 10 -

would result in "the grave problem of disparate treatment" between the Commonwealth and Appellees. *Id*. at 15; *see also* Casey's supplemental brief at 8. Mr. Young properly observes that the Commonwealth misstates the *Young* opinion in asserting the Court already determined that Appellees will suffer no prejudice. What the Court actually said was that Appellees would not have been prejudiced if this Court had allowed the Commonwealth to correct the *Walker* defect in early 2019. *See* Young's supplemental brief at 13-14.

Mr. Casey further contends that the issue on which Appellees sought interlocutory review, namely the constitutionality of the applicable anti-hazing statute, is just as significant as the suppression issue that the Commonwealth is pursuing. *See* Casey's supplemental brief at 9. He argues that allowing the Commonwealth to correct its *Walker* violation when the same lenity is unavailable to him prejudices him in having to "expend extensive resources" defending in a "month-long trial" forty-five charges that were brought pursuant to "a statute that has escaped Constitutional scrutiny for 33 years." *Id*. at 10. In sum, Appellees' position is that if they must suffer the consequences of their procedural misstep and go to trial on charges they otherwise might not have had to defend, the Commonwealth should likewise endure the consequence of an evidentiarily-handicapped prosecution. *Id*.

The Commonwealth rejoins that Appellees' unfairness argument is based upon "the false premise that the parties are equally situated," while, in

actuality, "[t]hey are not." Commonwealth's supplemental reply brief at 1. In particular, the dismissal of the Commonwealth's interlocutory appeals as of right would be "final and permanent," while Appellee's failure to obtain permissive interlocutory review does not impact their right to appellate review once the order becomes final if they are convicted of any of the charges under the then-applicable anti-hazing statute. *Id*. Furthermore, since the suppressed evidence is relevant to all of the charges against Appellees, the instant appeal challenging the suppression of the evidence impacts the entirety of the case, while Appellees' appeal by permission, even if successful, would not have terminated the prosecution. *Id*. at 2. Finally, the Commonwealth observes that Appellees made the same unfairness arguments to our Supreme Court in *Young* only to have them rejected by five of the seven justices. *Id*. at 3.

With the parties' arguments in mind, we next consider the objectives of the rules in question. It "is well-settled that procedural rules are not ends in themselves, and are not to be exalted to the status of substantive objectives." *In re Larsen*, 812 A.2d 640, 650 (Pa.Spec.Trib. 2002). As this Court has observed, "the purpose of our procedural rules is to facilitate the administration of justice, and our courts should apply them with that purpose in mind." *Huntington Nat. Bank v. K-Cor, Inc.*, 107 A.3d 783, 786 (Pa.Super. 2014). Rule 902 exists in its current form to make it uncomplicated for an appellant to achieve the end of perfecting an appeal, and "represents a

significant simplification of practice." Pa.R.A.P. 902, Note. "In all appeals the appellant prepares two documents: (1) a simple notice of appeal, and (2) a proof of service." *Id*.

Nonetheless, in **Walker**, our Supreme Court established a bright-line rule requiring quashal of appeals that did not comply with the Official Note of Rule 341. The **Young** decision did not eliminate the requirement of **Walker** and its progeny that separate notices of appeal be filed when a single order implicates multiple docket numbers whether the appeal is taken pursuant to Rule 341, Rule 311, or Rule 312. Rather, it held that Rule 902 is an available tool to avoid quashal for a **Walker** violation. Indeed, Rule 902 "creates a preference for correcting procedurally defective, albeit timely, notices of appeal so that appellate courts may reach the merits of timely appeals." **Williams**, *supra* at 588 (quoted with approval in **Young**, *supra* at 477)).

We conclude that Appellees' claims of unfair disparate treatment do not provide cause for us to disregard Rule 902's preference for allowing the correction of the Commonwealth's timely but defective notices of appeal. Indeed, we perceive no meaningful unfairness because we agree with the Commonwealth that the parties herein are not similarly situated. "Generally speaking, an appellate court's jurisdiction extends only to review of final orders." **Shearer v. Hafer**, 177 A.3d 850, 855 (Pa. 2018) (citing Pa.R.A.P. 341). "The final order rule reflects the long-held limitation on review by both federal and state appellate courts. Considering issues only after a final order

maintains distinctions between trial and appellate review, respects the traditional role of the trial judge, and promotes formality, completeness, and efficiency." *Id*. For that reason, only final orders and those interlocutory orders that our Supreme Court has deemed worthy of inclusion in Rules 311 and 313 are entitled to immediate review as of right. Classes of orders which our Supreme Court has not enumerated for an interlocutory appeal as of right *ipso facto* have been determined to lack a *per se* urgency for interlocutory review. *See Commonwealth v. Wardlaw*, 249 A.3d 937, 951 (Pa. 2021) (explaining that Rule 311's enumerated exceptions to the final judgment rule reflect a "careful balance" between encouraging "judicial economy by precluding piecemeal determinations and by preventing unjustifiably prolonged litigation" on the one hand, and "prompt review of erroneous interlocutory orders" on the other). The Commonwealth's appeals as of right fall into the former class, while Appellees' attempted appeal by permission were within the latter.

More significantly, an interlocutory appeal is the only avenue for the Commonwealth to secure appellate review of the trial court's evidentiary ruling. If the Commonwealth prevails at trial, it would not be an aggrieved party, but if the fact-finder acquits Appellees, their double jeopardy protections would prohibit a second trial. *See*, *e.g.*, *Commonwealth v. Feathers*, 660 A.2d 90, 94 (Pa.Super. 1995) ("A factfinder's verdict of acquittal is, of course, insulated from further review." (cleaned up)).

Appellees, on the other hand, may obtain review of their claim in a direct appeal as of right if a jury convicts them of violations of the applicable anti-hazing law, and have their convictions vacated if their argument prevails. *See*, *e.g.*, ***Commonwealth v. Sabula***, 46 A.3d 1287, 1293 (Pa.Super. 2012) (observing that review of denial of criminal defendant's pre-trial motion would not be lost if not subject to immediate review, as such rulings "would be mooted in the event of an acquittal and would, in the event of conviction, be reviewable in an appeal from a final judgment of sentence"). As such, the parties are neither similarly-situated as to the nature of their interlocutory issues nor the consequences that will flow from the denial of interlocutory review.

Appellees' additional arguments why it would be inappropriate to allow the Commonwealth to correct its procedural omissions do not present distinct allegations of prejudice, but merely reiterate the unfair disparate treatment contentions we have already rejected.[3] **See** Casey's supplemental brief at 9-10 (contending that it would be prejudicial to have to defend the anti-hazing

_____

[3] We acknowledge that Messrs. Young and Casey have now had to live with these charges hanging above their heads like the proverbial sword of Damocles for four years now and allowing the Commonwealth to correct their ***Walker*** deficiencies will prolong the prosecution and its attendant anxieties. However, their decision to pursue an interlocutory appeal by permission, which, even if successful, would have terminated only a fraction of the pending charges, suggests that they were willing and prepared to endure a significant delay. Consequently, the additional delay does not render application of Rule 902 inappropriate.

- 15 -

law charges that Appellees sought to challenge in their dismissed appeal, not that there would be any prejudice in having the Commonwealth's suppression issue reviewed prior to trial).

Therefore, upon consideration of the purpose of procedural rules generally, the particular Rules of Appellate Procedure implicated in this case, and our Supreme Court's rulings thereupon, we conclude that the law of the Commonwealth post-**Young** is as follows: when there is a **Walker** defect in an appeal to which Rule 902 applies, the default position is that we deem it appropriate to allow the correction, and only stray from the Rule's preference for good cause. In the absence of a showing of actual prejudice to an appellee resulting from the lack of separate notices of appeal at each docket, bad faith by an appellant, or other circumstances that render clemency inappropriate, a party filing an appeal as of right will as a matter of course be permitted to correct a **Walker** violation pursuant to Rule 902.[4]

Applying this to the case *sub judice*, we find Appellees' claims of unequal treatment to be insufficient cause for us to deny the Commonwealth the

_____

[4] We observe that the vast majority of criminal appeals that arrive in this Court with **Walker** defects are filed by defendants. As such, while the result in the instant case happens "to give the Commonwealth a break," **Commonwealth v. Young**, 265 A.3d 462, 485 (Pa. 2021) (Wecht, J. concurring and dissenting), overall, our determination that Rule 902 leniency should issue absent a showing that relief is inappropriate will provide the greatest benefit to (1) counseled criminal defendants who no longer will have to seek reinstatement of appellate rights based upon ineffective assistance of counsel, and (2) *pro se* defendants who otherwise would forever lose the ability to have this Court review their appellate issues.

opportunity to correct its failure to file separate notices of appeal at each of the six docket numbers. Thus, we remand these appeals to allow the Commonwealth, within ten days, to file separate notices of appeal at each of the six docket numbers at issue in these two appeals. Failure to do so will result in quashal of the appeals. Upon the trial court's certifications that the notices have been duly filed as part of supplemental records, we shall proceed to address the substance of the appeals.

Case remanded with instructions. Panel jurisdiction retained.

Judge Dubow joins this Opinion.

Judge Lazarus files a Concurring Opinion in which Judge Dubow joins.

Judge Bowes also files a Concurring Opinion.